Dick SCHILTZ d/b/a Key City Constructors a/k/a Dick Schiltz & Sons, Appellee-Cross Appellant,

v.

CULLEN–SCHILTZ & ASSOCIATES, INC., a corporation, Appellant-Cross Appellee

and

Illinois Central Railroad Company, a corporation, Defendant.

No. 55876.

Supreme Court of Iowa.

April 16, 1975.

John D. Randall, Cedar Rapids, for appellant-cross appellee.

Reynolds, Kenline, Breitbach, McCarthy & Clemens, Dubuque, for appellee-cross appellant.

Heard before MOORE, C. J., and MASON, LeGRAND, REES and REYNOLDSON, JJ.

MASON, Justice.

Dick Schiltz, doing business as Key City Constructors, brought a law action against Cullen-Schiltz & Associates, Inc., a consulting engineering firm, and the Illinois Central Railroad Company for damages on the theory the negligence of the engineering firm and the railroad company resulted in damages to a partially finished sewage treatment facility Schiltz was constructing for the town of Elk Run Heights, Iowa. Trial to a jury resulted in a verdict in favor of Schiltz in the amount of $50,000 against the engineering firm and a favorable verdict for the railroad company. The engineering firm appealed from the judgment entered on that verdict and plaintiff cross-appealed asserting the trial court erred in its instructions relative to the measure of damages.

In 1965 the town of Elk Run Heights retained the Cullen engineering firm to perform surveys and studies in order to ultimately design and provide plans for a complete sewage system for the town which previously had no such system. After completing its studies and obtaining approval of its proposals and designs from various governmental agencies the engineering firm submitted its plan to the Elk Run Heights town council in 1969 and they were approved. Plaintiff was the successful bidder and entered into a written contract with Elk Run Heights. In December of that year plaintiff commenced construction of the sewage treatment facility in accordance with the plans and specifications prepared by Cullen.

By June 13, 1970, plaintiff had constructed the entire lagoon (polishing pond), graded and surfaced the access road, completed the excavation for and constructed the aeration tank base and walls and removed 50 percent of the forming materials and bracing from the aeration tank walls.

Sunday, June 14, saw the occurrence of a severe cloud burst, resulting in extensive flooding of nearby Elk Run Creek. Due to this flooding the aeration tanks were somehow floated and damaged so they had to be completely demolished, removed and reconstructed. In addition to reconstruction expenditures plaintiff expended large sums for rental equipment and cleanup operations.

In division 1 of his petition as amended plaintiff alleged negligence of the Cullen engineering firm in one or more of four specified particulars was the proximate cause of the damage to the aeration tanks which had been constructed as a part of the sewage treatment facility. The court submitted only the specification alleging Cullen was negligent in failing to provide in the plans submitted to the town for a dike of sufficient height under the existing circumstances. Division 2 was directed against Illinois Central and division 3 asserted a claim against both Cullen and the railroad.

Defendant in answer admitted identity of the parties and their residence, denied it was negligent in any of the respects specified by plaintiff as the proximate cause of the damage to the aeration tanks. Cullen asserted several affirmative defenses in which it relied on the contract between plaintiff and the town of Elk Run Heights as precluding plaintiff from making claim against Cullen since the engineering firm was the agent of Elk Run Heights and the beneficiary of the contract.

The affirmative defense pertinent here is based on the contention damage to the aeration tanks was proximately caused by plaintiff's negligence in one or more of the following particulars: (a) in failing to properly investigate the site and conditions which would be encountered in the construction project prior to entry into the contract; (b) in failing to comply with the terms and conditions of the contract between the plaintiff himself and the town of Elk Run Heights, as is pleaded by this defendant as an affirmative defense to plaintiff's cause of action; (c) in failing to

diligently pursue and promptly complete the construction project; and (d) in failing to inspect and supervise the construction project.

Before trial plaintiff filed application for separate adjudication of law points pursuant to rule 105, Rules of Civil Procedure alleging in substance that: (1) the affirmative defenses contained in various specified paragraphs of division 1 and division 3 of Cullen's separate answer constitute the pleading of contractual defense matters which are not available to Cullen since the contract in question was between plaintiff and the town of Elk Run Heights and does not and was not intended by the parties to benefit Cullen; and (2) the counterclaim filed by Cullen is based on plaintiff's alleged breach of a contract between plaintiff and the town of Elk Run Heights, a contract which does not and was not intended by the parties to benefit said defendant. In an amendment to his application plaintiff asserted similar allegations as to the affirmative defenses contained in divisions 1 and 3 of defendant's second amendment to its answer.

In resistance Cullen contends generally its affirmative defenses were based upon breach of plaintiff's duty under his contract with the town which resulted in damage to Cullen; that the engineering firm was either a party to the contract between plaintiff and the town of Elk Run Heights as engineer and agent for the town or was a beneficiary under the contract and had the right as a matter of law to require plaintiff to show compliance with the terms of that contract. Cullen also contends it was plaintiff's failure to comply with the terms of his contract with the town rather than any negligence on the part of Cullen which caused plaintiff's damage. Cullen further alleged plaintiff's contention was inconsistent with his claim against Cullen since that claim was based upon the contract which existed between Cullen and the town of Elk Run Heights.

The trial court's ruling on plaintiff's application for adjudication of law points de-

termined, inter alia, that paragraph 4 of the contract between plaintiff and the town did not run for the benefit of the engineering firm but was a factor that might be considered by the jury in determining certain specifications of Cullen's affirmative defenses relating to plaintiff's contributory negligence. This paragraph of the contract dealt with the obligation of plaintiff as contractor to familiarize himself with the nature of the project and the amount of the materials and the type of equipment needed.

The ruling further provided any breach of contract between plaintiff and Elk Run Heights requiring plaintiff to complete the work within a certain period of time was not available to Cullen as a defense but any delay in construction might under proper evidentiary showing be considered in connection with a specification of defendant's defense of contributory negligence. The ruling further provided Cullen's counterclaim failed to state a good cause of action.

As indicated, before submitting the case to the jury the trial court withdrew all specifications of negligence alleged by plaintiff except the allegation as to Cullen's negligence in failing to provide plans for a dike of sufficient height in view of the possibility of flooding.

Cullen asserts the issues presented for review by its appeal arise from error of the trial court: (1) in refusing to allow defendant to rely on defenses inherent in the contract between plaintiff and town of Elk Run Heights; (2) in overruling defendant's motion to dismiss and for directed verdict since the evidence showed no material defect in the construction plans, defendant exercised due care in preparing the plans, and any error in the plans was not the proximate cause of the damage; and (3) in overruling defendant's motion for directed verdict made at the close of plaintiff's case and renewed at the close of all evidence on the ground plaintiff had failed to generate a jury question as to the measure of damages.

I. The problem presented by defendant's first contention is whether the trial court's ruling sustaining plaintiff's objections to questions propounded by defendant to plaintiff on cross-examination relative to the witness' awareness of the provisions of paragraph 9 of the contract between plaintiff and the town of Elk Run Heights erroneously precluded Cullen from presenting his theory of contributory negligence.

As pointed out plaintiff's cause of action against Cullen is based on the theory the engineering firm was negligent in failing to provide plans for a dike of sufficient height in view of the possibility of flooding; that its negligence in this respect was a proximate cause of the damage to the aeration tanks and plaintiff's losses.

Cullen alleged as a complete defense or bar to plaintiff's recovery plaintiff was negligent in one or more of four specified respects which was a proximate cause of plaintiff's damages. The specifications of negligence relied on by Cullen to establish contributory negligence have been set out earlier in this opinion.

Defendant contends evidence bearing on plaintiff's alleged breach of certain provisions in the contract entered into between plaintiff and the town of Elk Run Heights was relevant and material to the issue presented by Cullen's affirmative defense of contributory negligence.

The provisions relied on dealt with (1) plaintiff's duty to investigate the site of the proposed construction, (2) plaintiff's assumption of all responsibility for any damage from any cause, and (3) plaintiff's duty to keep the site free of all ground water, sewage and storm water. More specifically these provisions as gathered from defendant's answer and counterclaim are as follows:

"Instructions to Bidders—No. 1 * * * work shall be commenced and completed on the dates as specified * * * except for extensions of time * * * ."

"The time of completion shall be considered as the essence of the contract."

"Bidders are required to form their own judgment of the quantities and character of the work by personal examination of the site where it is to be done and of the specifications and drawings relating to it, or by such other means as they may prefer. Bidders must not assert any misunderstanding in regard to anything relating to the work, or the location and site conditions where it is to be executed."

"The undersigned, having become familiar with the local conditions affecting the cost of the work, and with the contract documents, including public notice, Instructions to Bidders, General Conditions of the Contract, Special Conditions of the Contract, the Form of Proposal, the Form of Contract, Form of Bond, etc., Plans, Drawings, and Specifications, and Addenda, and Exhibits issued and attached to the official contract documents on file in the office of the Town Clerk of Elk Run Heights, Iowa, as designated in the public notice  *  *."

"The contract price shall include the cost of all temporary supports and braces that may be necessary to secure a safe prosecution of the work until the permanent structure is completed;  *  *  *."

"*Protection against water*: The contractor shall do all pumping and bailing, build all drains, and do all other work necessary to keep the excavation clear of ground water, sewage, or storm water during the progress of the work and until the finished work is safe from injury  *  *  *  necessary precaution shall be taken to provide against flooding."

"It is understood and agreed that the contractor has, by careful examination, satisfied himself as to the nature, character, quality and quantity of the materials to be used, the type and quantity of equipment and facilities needed, preliminary to and during the prosecution of the work, the general and local conditions, and other matters which can, in any way, affect the work under this contract.  *  *  *."

"The contractor shall assume all responsibility for any damage which may happen to the work provided for in the contract, from any cause whatsoever prior to the final completion and acceptance thereof. All loss or damage arising out of the nature of the work to be done or from any unforeseen obstructions, difficulties, or conditions which may be encountered in the prosecution of the same or *from the action of the elements* or from encumbrances on the line of the work or from any act or omission on the part of the contractor or any person or agent employed by him not authorized by the contract, shall be borne by the contractor. Said contractor shall make good at his expense any damage, injury or loss which may be sustained before final completion and acceptance and his bond shall be security therefor." (Emphasis in defendant's answer and counterclaim). The foregoing paragraph will be referred to later in this opinion.

As a matter of convenience we have elected in quoting the foregoing provisions of the contract to place them in a different sequence from that followed in either the contract or defendant's pleadings.

In connection with plaintiff's direct examination exhibit 53, the contract between plaintiff and Elk Run Heights; exhibit 51, the set of plans or blueprints for the sewage treatment facility; and exhibit 52, a set of specifications used by plaintiff in bidding on the project, were all offered and received in evidence for the jury's consideration.

The cross-examination of plaintiff by defendant and the railroad covers over 11 full pages of the appendix. This examination covered the full range of plaintiff's investigation of the site and conditions existing, his review of the plans and specifications, his understanding of the nature and purpose of the facilities to be constructed, his knowledge or lack of knowledge of the specified completion date of the contract, his inquiry concerning maximum flood level, the provision for suspension of work due to inclement weather and his inspection of

the construction site several times during the progress of the work.

The specific ruling challenged by defendant which gives rise to the present issue occurred during plaintiff's cross-examination when the witness was asked, "Now, in connection with the contract documents, I call your attention to paragraph 9 under general conditions, on page 4 which reads, * * * [counsel then read the entire last quoted paragraph set out earlier]. Were you aware that that paragraph was a part of the contract?"

Plaintiff objected to the examination as irrelevant, incompetent and immaterial in view of the court's ruling on adjudication of law points, pointing out that the question referred to provisions of a contract between the town of Elk Run Heights and plaintiff, a contract to which Cullen was not a party. The court sustained the objection.

In written brief and argument defendant tells us several times in one way or another that the limited purpose for which it claimed admissibility of evidence bearing on plaintiff's alleged breach of certain contract provisions was the tendency such evidence would have in establishing plaintiff's contributory negligence in the execution of his responsibility under the contract; the offer was not for the purpose of taking advantage of contract provisions which would act in the way of contract defenses for Elk Run Heights if suit were brought against it. Even if it be conceded this limited purpose was known to the court in view of its statements in ruling on adjudication of law points as set out earlier, Lemke v. Mueller, 166 N.W.2d 860, 870–871 (Iowa 1969), this would not help defendant's position.

■ Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. State v. Hopkins, 192 N.W.2d 747, 752 (Iowa 1971).

■ If plaintiff succeeded in generating a jury question on the issue of Cullen's negligence in failing to provide plans for a dike of sufficient height in view of the possibility of flooding, the question of plaintiff's awareness of the contract provision placing responsibility on him for any damage which might happen to the work provided for in the contract prior to final completion and acceptance thereof would not, in our opinion, logically tend to establish plaintiff's contributory negligence as defendant argues.

Defendant's status either as a beneficiary or an engineer or agent for the town under the contract between plaintiff and Elk Run Heights would not remedy the defect due to lack of relevancy. Since a determination of Cullen's status does not reach the point we do not decide whether the engineering firm was or was not a beneficiary or agent.

Defendant maintains the court's ruling sustaining plaintiff's objection to the specific question just considered also prevented Cullen from inquiring of plaintiff as to the extent of his examination of the work conditions as required by the contract with Elk Run Heights. Defendant was also prevented from bringing to the attention of the jury the completion date set out in the contract and plaintiff's duty under the clause "Protection against water," set out earlier.

Much of this testimony was brought out by defendant in the extensive cross-examination of plaintiff. Defendant fails to convince us how further questioning along this line would have produced relevant evidence.

Defendant's contention considered in this division is without merit.

II. Defendant asserts the trial court erred in overruling his motions to dismiss and for a directed verdict based upon the facts there were no material defects in the construction plans, that Cullen exercised due care in preparing the plans, and that any error in the plans was not the proximate cause of the injury.

More specifically, defendant claims plaintiff failed to show the high water mark was established negligently by defendant (and, thus, the height of the dikes) or that the dikes were designed to keep flood waters from the facility.

The question presented to the trial court by defendant's motion to direct was whether there was sufficient evidence to warrant submission to the jury the question whether Cullen was negligent in failing to provide plans for a dike of sufficient height in view of the possibility of flooding and if so whether this negligence was a proximate cause of the damages for which plaintiff sought recovery.

■ In determining whether a jury question was engendered the trial court views the evidence in the light most favorable to the party against whom the motion was made regardless of whether such evidence is contradicted and every legitimate inference which may be reasonably deducted therefrom must be carried to the aid of the evidence and if reasonable minds can differ on the issue it is for the jury. West v. Broderick & Bascom Rope Company, 197 N.W.2d 202, 211 (Iowa 1972); Coppola v. Jameson, 200 N.W.2d 877, 879 (Iowa 1972); Gunnison v. Torrey, 216 N.W.2d 361, 364 (Iowa 1974); Steichen v. Shepherd, 216 N.W.2d 412, 415 (Iowa 1974); McCaull v. Universal Manufacturing Company, 218 N.W.2d 592, 593 (Iowa 1974); Nolte v. Case, 221 N.W.2d 741, 743 (Iowa 1974).

This rule is applied when a party seeks a directed verdict, dismissal, or judgment notwithstanding the verdict. See Lakatosh v. Diamond Alkali Company, 208 N.W.2d 910, 913 (Iowa 1973); Osterfoss v. Illinois Central Railroad, 215 N.W.2d 233, 238 (Iowa 1974); and Winter v. Honeggers' & Co., Inc., 215 N.W.2d 316, 321 (Iowa 1974).

■ Since defendant is a professional consulting engineering firm, we are convinced the correct standard by which its actions are to be measured is that degree of skill, care and learning ordinarily possessed and exercised by members of that profession in good standing in similar circumstances. As tending to support this position see Dickinson v. Mailliard, 175 N.W.2d 588, 595–597 (Iowa 1970) and Perin v. Hayne, 210 N.W.2d 609, 615 (Iowa 1973).

The Iowa court has fixed the standard for the architecture profession, which standard should logically apply to engineers who design buildings and other facilities. The court stated:

"As a registered practicing architect, defendant was bound to furnish design and specifications prepared with a reasonable degree of technical skill, and such as would produce, if followed and adhered to, a building of the kind called for, without marked defects in character, strength or appearance." Chrischilles v. Griswold, 260 Iowa 453, 460, 150 N.W.2d 94, 99.

■ If a plaintiff properly proves a defendant's "work fell short of this standard and that he was damaged," he could maintain an action in tort. *Chrischilles,* 260 Iowa at 460, 150 N.W.2d at 99.

On review in this court the question is whether the jury in the exercise of its function as trier of facts would be justified in finding plaintiff had established by a preponderance of the evidence plans and specifications for the construction of a sewage treatment facility of the type here prepared in the exercise of ordinary care in accordance with the standard of the engineering profession should have included, under the circumstances shown, a dike of sufficient height to prevent the possibility of flood waters from entering the project.

In determining this issue this court views the evidence in accordance with the same principles required for review by the trial court.

Both parties introduced expert testimony bearing on the purpose the dikes were to serve, with defendant asserting they were to hold effluents in the polishing pond and plaintiff pointing out a construction site on a flood plain should always be protected

from floods. Perhaps significant is the fact the dikes surrounded the entire facility even though a defense witness opined this was just for aesthetics (i. e. to make a sewage treatment plant beautiful?).

Both parties also introduced evidence on the maximum flood levels of Elk Run Creek. Much of plaintiff's evidence came from local residents who testified a 1969 flood was more severe than the June 14, 1970, flood. Defendant countered with expert opinion on how one determines maximum flood level, asserting the methods employed were reasonable.

In short, the evidence was contradictory. The jury had to decide the case based upon this conflicting evidence. In other words, the jury persons had to choose which evidence was the more convincing, which they apparently did in favor of plaintiff.

■ There is substantial evidence when viewed in the light required which would warrant a jury in finding Cullen had negligently designed the dikes; that such negligence was the proximate cause of plaintiff's damage.

The trial court did not err in any of the respects urged by defendant in this assignment.

III. The trial court's refusal to sustain defendant's motion for directed verdict made at the close of plaintiff's case and renewed at the close of all evidence presents another issue for review. Defendant's motion was predicated on the theory plaintiff had failed to generate a jury question in regard to the measure of damages.

At the conclusion of plaintiff's case the railroad moved for directed verdict on the ground "plaintiff * * * [had] failed to raise a jury issue relative to the issue of damages because he failed to show the fair market value or actual value of the sewage treatment facility immediately prior to the flood of June 14, 1970." At this point Cullen, who had previously stated the basis of his motion for a directed verdict, adopted that portion of the railroad's motion relating to damages. At the conclusion of all evidence defendant renewed this ground by reference.

Defendant maintains in written brief and argument the proper measure of damages to the sewage treatment facility is the reasonable cost of repairing or restoring the facility not to exceed the fair market value or actual value of the improvement immediately prior to the damage. In this connection defendant argues plaintiff failed to sustain his burden of introducing some evidence of the value of the property immediately prior to the damage.

Defendant relies on State v. Urbanek, 177 N.W.2d 14, 16-17 (Iowa 1970), in support of its position. In the cited case the State sued defendant driver for damages to a state bridge occasioned by defendant's truck colliding with the bridge. The court stated, " * * * the general rule in Iowa for repairs or for replacement is the fair and reasonable cost of replacement or repair, but not to exceed the value of the property immediately prior to the loss or damage. Had the bridge been totally destroyed, the limitation of recovery would be the fair and reasonable market value, and if no market value could be established, the actual or real value, and if the property is repairable and the cost of repairs exceeds the market value (or in the event no market value can be established, the real or actual value) recovery is limited to such before-accident value. * * * [citing authorities]."

Defendant specifically insists plaintiff's evidence related only to the cost of repair and no evidence was introduced concerning either market or actual value.

■ It is apparent that a sewage disposal facility, partially built, as here, has little or no market value. Therefore, actual value is the test in determining the value of the construction immediately prior to the damage.

The following principle is stated in Britven v. Occidental Ins. Co., 234 Iowa 682, 686-687, 13 N.W.2d 791, 794:

"Generally speaking, in determining actual values of buildings the evidence covers a somewhat wider range than where market value is the test. It is proper to bring to the aid of the jury all facts and circumstances which fairly tend to prove actual value, such as the size and dimensions of the building, the kind and quality of materials of which it is constructed, its age, the amount of wear and tear to which it has been subjected, its state of repair and all other pertinent matters. Except where too remote, it is usually proper to show the original cost of the building. * * * [citing authorities].

"Almost invariably it may also be shown, as bearing on the question of actual value, what it would cost at the time in question to replace the building. Of course, where the reproduced building would be more valuable than the former one, because of its age or condition, deduction from such cost should be made for such depreciation. * * [citing authorities]. These and other authorities recognize that the principal factors in determining the actual value of a building are usually the original cost, the cost of replacing it, and a proper allowance for depreciation from use, age, and other like causes. * * * [citing authorities]."

■ Plaintiff testified the town had paid him the sum of $53,185 for the work completed up to the date of the flood. The appendix does not disclose the schedule of payments required of Elk Run Heights during the progress of the work. However, it is a fair inference to be drawn by the jury that the amount paid was a fair indication of the owner's opinion as to the value of the facility at that stage of completion. In support of this position it is pointed out all construction at the site was new. Evidence as to the amount paid by the town was therefore not subject to a challenge of remoteness on the theory the cost of materials and labor was substantially different from those costs at the time of the injury.

■ There is the further fact the flooding of Elk Run Creek on June 14 caused the flood waters to pour over the dike constructed in connection with the sewage treatment facility and in some manner floated the aeration tanks out of their original position. This resulted in their being cracked and damaged beyond repair after they settled. There is substantial evidence that by reason of the flood waters pouring over the dike and entering the project the facility had to be completely demolished and reconstructed; it was necessary to reshape the dikes as a result of erosion, to cut a channel or waterway through the road for the passage of flood waters and to regrade and resurface the access road. Under these circumstances the amount paid was a fair criterion of the actual value of the construction before the flood and was a proper element to be considered by the jury in determining actual value of the facility prior to June 14.

Defendant also argues plaintiff's damage evidence being oral and not documentary was not "the best evidence," an objection Cullen timely urged unsuccessfully during trial. It is true as defendant contends plaintiff laid no basis for the introduction of secondary evidence.

The challenged evidence was a rundown of equipment rental costs and wages to employees. Defendant argues Schiltz undoubtedly " * * * had in his possession receipts, vouchers, agreements or some form of written evidence which would better prove the elements of damage he testified to."

The authors of McCormick on Evidence (Second Ed.), section 229, say "the only actual rule that the 'best evidence' phrase denotes today is the rule requiring the production of the original writing."

■ Rule of best evidence obtainable is expressly, if not solely, applicable to documentary evidence, Daniels v. Bloomquist, 258 Iowa 301, 312, 138 N.W.2d 868, 875, and has no application where the fact to be proved is independent of any writing even though the fact has been reduced to a writ-

ing or is evidenced by a writing. 2 Jones on Evidence (Sixth Ed., Gard), section 7:4. See also 4 Wigmore on Evidence (Chadbourn Rev.), section 1174.

The rule excludes testimony designed to establish the terms of a document, and requires the document's production instead, but does not exclude testimony which concerns the document without aiming to establish its terms. U. S. Homes, Inc. v. Yates, 174 N.W.2d 402, 404 (Iowa 1970).

The trial court did not err in its ruling on Cullen's objection urged on this ground.

All other contentions and arguments asserted in the third division of defendant's brief and argument, whether specifically mentioned in this opinion or not have been considered and rejected as without merit.

IV. Plaintiff's cross-appeal presents the question whether plaintiff is limited in the extent of his recovery to the reasonable cost of repairing or restoring the facility not to exceed the actual value of the improvement immediately prior to the damage or entitled to the reasonable amount of expenses incurred in cleanup operations actually required as a consequence of the flood in addition to the reasonable costs of reconstruction.

In an amendment to each of the three divisions of his petition plaintiff had alleged that as a result of the damage to the sewage treatment facility he had incurred expenses in cleaning up the damage and in redoing the damaged work.

In support of these allegations plaintiff had offered evidence tending to show that in order to restore the sewage treatment facility to its condition prior to the June 14 flood, he had incurred large sums for rental equipment and cleanup operations in addition to the reconstruction expenditures.

In instruction 20 the jury was told:

" * * *

"The measure of recovery for damage to the aeration tanks, and other work which plaintiff had completed in the sewage treatment facility, is the reasonable cost of the repair of such damage but not exceeding the amount plaintiff had invested in the entire work on June 14, 1970, and, further, not exceeding the amount shown by the evidence."

Before reading the instructions to the jury, the trial court explained to counsel since there was obviously no market for a partially built disposal plant or any question as to depreciation because the construction had not existed for any substantial time plaintiff's investment in the work completed prior to the time was the actual value of the construction.

Plaintiff maintains the instruction limited his recovery to the reconstruction expenditures and precluded him from a possible recovery for the amounts incurred for rental equipment and cleanup operations.

Plaintiff's objection to instruction 20 made in accordance with rule 196, Rules of Civil Procedure, alerted the trial judge to the purported defect claimed and preserved any alleged error for review. State v. Baskin, 220 N.W.2d 882, 886 (Iowa 1974).

Bearing in mind that the principle underlying allowance of damages is to place the injured party in the same position, so far as money can do it, as he would have been had there been no injury or breach of duty, that is, to compensate him for the injury actually sustained, Golden Sun Feeds, Inc. v. Clark, 258 Iowa 678, 682, 140 N.W.2d 158, 161 and authorities cited; Adams v. Deur, 173 N.W.2d 100, 105 (Iowa 1969); Householder v. Town of Clayton, 221 N.W.2d 488, 493 (Iowa 1974), the challenged instruction is vulnerable to plaintiff's criticism.

The principle relied on by defendant and stated in State v. Urbanek, 177 N.W.2d at 16–17 that the proper measure of damages to the sewage treatment facility is the reasonable cost of repairing or restoring the facility not to exceed the actual value of the improvement immediately prior to the

damage is the general rule but subject to proof of special items of damages. Ruden v. Hansen, 206 N.W.2d 713, 718 (Iowa 1973).

Where the injury is such that the premises may be restored to as good condition as it was before, the measure of recovery is the fair and reasonable cost and expense of such restoration. McCune v. Muenich, 255 Iowa 755, 761, 124 N.W.2d 130, 133 and authorities cited.

Expenses incurred for rental equipment and cleanup operations are an integral part of the direct property damage incurred. In support see Hales v. Green Colonial, Inc., 490 F.2d 1015, 1021 (8 Cir. 1974) and Cooper v. Miller, 380 F.Supp. 409, 411 (N.D.Tex.1974).

The trial court erred in giving instruction 20 since it limited plaintiff's extent of recovery in the respect determined in this division.

The case is therefore

Affirmed on defendant's appeal and reversed and remanded for a new trial on plaintiff's cross-appeal.