**Marguerite SCHMITT, Conservator of the Estate of Andrew Schmitt, Appellee,**

v.

**CLAYTON COUNTY, Iowa, Appellant.**

No. 62409.

Supreme Court of Iowa.

Oct. 17, 1979.

Rehearing Denied Nov. 8, 1979.

H. F. Reynolds of Reynolds, Kenline, Breitbach, McCarthy, Clemens, McKay & Naughton, Dubuque, and Kevin H. Clefisch, Garnavillo, for appellant.

R. L. Donohue, West Union, for appellee.

REES, Justice.

This appeal by Clayton County is from a judgment for the plaintiff in a personal injury action. Plaintiff, Marguerite Schmitt, as conservator of the estate of Andrew Schmitt, asserted the failure of the defendant county to place adequate and proper warning signs on a dangerous curve was the proximate cause of injuries to plaintiff's ward. In July of 1973 the pickup truck operated by Andrew Schmitt left the curve on a road in defendant county, resulting in brain damage to Andrew, due to which he remains in a comatose state, requiring constant care and attention.

The county contends the trial court erred in the admission of expert testimony and in its instructions to the jury. Because we find merit in one of defendant's exceptions to the instructions of the trial court, we reverse its judgment and remand for a new trial.

Prior to reaching the issues directly presented in this appeal, we wish to clarify a question of construction which was raised by the parties when we were considering defendant's petition for rehearing, which we denied on September 18, 1979 by order entered that date, but in which order we directed the per curiam opinion filed on July 25, 1979 be withdrawn. Our reading of Iowa Rule of Civil Procedure 247 [1] leads us to conclude that the maximum period of time which a trial court may allow for post-trial motions is 40 days; the initial 10-day period provided for by the rule, plus an additional period of up to 30 days upon the required showing of good cause. We take judicial notice of the fact that the rule

has been interpreted in a number of districts to allow a maximum period of 30 days and are confident that our construction will provide for a uniform application of the rule throughout the State.

The following issues are presented for review:

(1) Was the plaintiff's expert witness, who was not a licensed engineer, qualified to express an opinion as to the county's negligence?

(2) Was the plaintiff's ward contributorily negligent as a matter of law?

(3) Does the evidence in the record support all aspects of the hypothetical question asked of plaintiff's expert witness?

(4) Should the jury have been instructed that the county could be found liable for failing to apply "due care in the exercise of professional engineering judgment" rather than with regard to a general standard of care?

(5) Did the trial court improperly instruct the jury that a violation of a statutory traffic standard constituted a prima facie showing of negligence rather than negligence per se?

(6) Was there sufficient evidence to justify the submission to the jury of an instruction on sudden emergency?

(7) Did the trial court err in instructing the jury regarding the applicability of the mortality table which was introduced into the record?

(8) Was the award of the jury excessive?

I. We find the fifth of the aforelisted issues to be dispositive of this appeal. Consequently, we will first address that issue and then discuss those of the remaining issues which are likely to recur at retrial.

The county contended that Andrew Schmitt was contributorily negligent in causing the accident and that he and his estate were, therefore, barred from recover-

1. "Motions under rules 243 and 244 and bills of exception under rule 241 must be filed within ten days after the verdict, report or decision is filed, or the jury is discharged, as the case may be, unless the court, for good cause shown and not ex parte, grants an additional time not to exceed thirty days."

ing in an action against the county. Failure to keep a proper lookout and failure to maintain control of his vehicle were alleged as common law instances of contributory negligence on the part of the plaintiff's ward, and were submitted to the jury in the court's instructions as potential prima facie evidence of negligence. Failure to travel at a reasonable and proper speed under existing conditions and failure to reduce speed in approaching and traversing a curve were pled by the county as statutory violations. As to the latter, the instruction correctly stated that such a violation by Andrew Schmitt would constitute negligence per se. *Kisling v. Thierman,* 214 Iowa 911, 915, 243 N.W. 552, 554 (1932). Violation of the former was submitted as only prima facie evidence of negligence. We conclude that violation of the duty to travel at a reasonable and proper speed under the circumstances, mandated by § 321.285, The Code 1973, constitutes negligence per se and that the jury should have been so instructed.

In *Kisling v. Thierman* we clearly stated that violation of a statute regulating the operation of a motor vehicle on a public road is negligence. While the reasonable and proper standard to be applied by the trier of fact under § 321.285 is similar to that which would be used to determine whether the aforementioned common law duties had been abrogated, it does not follow that the legal implications stemming from such violations should be synonymous. If a violation of a statutory duty of care is found, our case law requires a finding of negligence, with one exception not applicable here, in the context of laws of the road. *See, e. g., Rush v. Sioux City,* 240 N.W.2d 431, 442 (Iowa 1976); *Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632, 643–44 (Iowa 1969); *Kisling v. Thierman.* As in the case of other statutes, we have looked to the intent and purpose of the pertinent law to determine whether it prescribes the applicable standard of care. *See, e. g., Koll v. Manatt's Transportation Co.,* 253 N.W.2d 265, 270 (Iowa 1977); *Rosenau v. City of Estherville,* 199 N.W.2d 125, 128–29 (Iowa 1972).

We hold that the jury should have been instructed that a violation of § 321.285 constitutes negligence per se, rather than prima facie evidence of negligence. In failing to so instruct the jury, the trial court committed reversible error.

Having concluded that reversal is required, we will discuss briefly those remaining issues which we anticipate may rise again on retrial of this case.

■ II. The defendant county challenges the qualifications of plaintiff's expert witness, transportation consultant George Brown, to testify regarding the adequacy of the traffic signs preceding the curve in question. The defendant contends that since Brown is not a licensed engineer, he is not qualified to express an opinion on the adequacy of the signs placed by the county upon advice of the county engineer.

Our standard regarding the capacity of an individual to testify as an expert was set out in *Karr v. Samuelson, Inc.,* 176 N.W.2d 204, 210 (Iowa 1970). Basically stated, we must determine whether Mr. Brown possesses sufficient expertise regarding the topic in question to qualify as an expert. We conclude that he does.

We have, on prior occasions, commented upon the expert testimony of the witness Brown. Most notably, in *Heth v. Iowa City,* 206 N.W.2d 299, 302–03 (Iowa 1973), he expressed an opinion as to the adequacy of the signing, lighting and grading of the scene of an accident. While not relying on *Heth* where Brown's qualifications were not in question, we find his credentials to be more than adequate. It is true that he does not have a degree in engineering; yet he has devoted substantial time and effort to the study of traffic safety and regulation. Importantly, we note the record shows that Brown taught for some five years in the transportation area of the College of Engineering at the University of Iowa. Even without a degree, he was competent to express his opinion in this case. The trial court did not abuse its discretion in admitting his testimony.

III. The county also contends the trial court erred in refusing to strike the testimony of Myron Lofgren regarding his computation of the maximum safe speed at which the curve in question could have been traversed when it became apparent that his calculation assumed a flat curve on a flat highway. Lofgren stated that his estimation of the safe speed of the curve would be substantially increased if the curve were banked. The record indicates that one side of the curve is superelevated above the other side by some ten degrees.

While it is questionable whether any prejudice resulted to the defendant, we note that relevant data, such as the grade or banking of the highway, which would influence his computation, should be embraced in the hypothetical question asked of the expert witness. *See Albrecht v. Rausch,* 193 N.W.2d 492, 495 (Iowa 1972).

IV. The county next contends the trial court erred in instructing the jury in regard to the standard of care to be exercised in placing road signs. It contends that its signing should be evaluated according to a "reasonable" professional engineering judgment standard rather than a "reasonable person under the circumstances" test.

We have established a professional standard of negligence such as that urged by the county in considering actions against consulting engineering firms, *Schiltz v. Cullen-Schiltz & Associates, Inc.,* 228 N.W.2d 10, 17 (Iowa 1975) and architects, *Evans v. Howard R. Green Co.,* 231 N.W.2d 907, 913 (Iowa 1975). In these last cited cases, the professional has been the defendant and the duty involved was one allegedly owed to the plaintiff by the professional. Here, the county engineer is not a party and the duty on which the action is based is one owed by the county to the traveling public, a duty of "ordinary care under the circumstances". *See Symmonds v. Chicago, Milwaukee, St. Paul and Pacific Railroad Co.,* 242 N.W.2d 262, 265 (Iowa 1976) and cases cited therein. As noted in *Symmonds,* that authorization, and concomitant duty, for the placement of traffic-control devices by local governmental entities lies in § 321.255:

Local authorities in their respective jurisdiction shall place and maintain such traffic-control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or local traffic ordinances or to regulate, warn, or guide traffic. All such traffic-control devices hereafter erected shall conform to the state manual and specifications.

This section establishes the obligation of the county to warn travelers of dangerous or changing road conditions. It establishes a general duty to place adequate signs.

It is true the placement of signs would normally be directed by the county engineer and the statute mandates compliance with the state manual regarding the same, which incorporates an exercise of engineering judgment. Compliance with similar state manuals has been considered on the question of negligence. *Hunt v. State,* 252 N.W.2d 715, 718–19 (Iowa 1977). We have not decided whether noncompliance with this particular manual constitutes negligence per se. *Anderson v. Lyon County,* 206 N.W.2d 719, 722 (Iowa 1973). Such an issue is not presented here.

We find it sufficient to note that the duty of the county is of a general nature, involving an exercise of due care under the circumstances to warn traffic of changing or dangerous road conditions. While engineering knowledge and skills may well be utilized by the county in fulfilling its obligation, the county's obligation is stated in broader terms. Compliance with recognized or, in the case of the manual, statutorily mandated engineering procedures would be most relevant to whether a county has properly discharged its function. The county's duty is not necessarily coterminous with a county engineer's professional judgment. The ultimate question is whether the public had reasonable warning of the road conditions it would face, not whether the county engineer acted within the bounds of his professional discretion, although there would or could be much evidence common to these determinations.

While it may be argued that the manual supplies the standard to be applied in sign placement, we note that other jurisdictions which have addressed the question have not found compliance or non-compliance with a state manual similar to ours to be dispositive of the question of negligence, but have retained the general standard of reasonable care under the circumstances. *Pickering v. State,* 57 Haw. 405, 407–08, 557 P.2d 125, 127 (1976); *Smith v. Cook,* Ind., 361 N.E.2d 197, 201 (1977); *Martin v. Ann Arbor Railroad,* 76 Mich.App. 41, 46–49, 255 N.W.2d 763, 766–67 (1977). *See also* Restatement (Second) of Torts § 288C (1965) ("Compliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable man would take additional precautions.").

Our standard would allow a finding of negligence when there has been compliance with existing professional engineering standards. As indicated by the evidence presented in this case, we doubt whether this would occur often. The obligation of the county is broader than that of an engineer to a client. Our standard recognizes this distinction.

■ V. We conclude the trial court did not abuse its discretion in instructing the jury on the legal excuse of sudden emergency. There was evidence in the record on which to base such an instruction. While much of this evidence is contained in the testimony of Dr. Brown, that testimony was properly admitted and provides an adequate basis for the instruction.

■ VI. The county next contends the trial court erred in instructing the jury in regard to the Commissioner's Standard Ordinary Mortality Table and Andrew Schmitt's life expectancy. No error is apparent in the instruction as given. The instruction made reference to the mortality table only as a guide in considering the medical testimony as to the life expectancy of Andrew Schmitt who was 18 years of age at the time of the accident. The ultimate determination of Andrew Schmitt's life expectancy and the corresponding award of damages was left to the jury.

VII. Concluding the trial court erred in instructing the jury on the legal effect of a violation of § 321.285, The Code, on the issue of contributory negligence, we reverse the judgment of the trial court and remand for a new trial.

REVERSED AND REMANDED.

All Justices concur, except McCORMICK and HARRIS, JJ., who concur specially.

McCORMICK, Justice (concurring specially).

I concur in the result and all of the opinion except division III. I agree with Wigmore's view that "[t]he hypothetical question, misused by the clumsy and abused by the clever, has in practice led to intolerable suppression of truth." 2 J. Wigmore, *Evidence in Trials at Common Law* § 686, at 812 (3d ed. 1940). I would adopt the standard delineated in Fed.R.Evid. 705:

The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

*See Rabata v. Dohner,* 45 Wis.2d 111, 172 N.W.2d 409 (1969); C. McCormick, *Law of Evidence* § 36 (2d ed. E. Cleary 1972): 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 705[1] (1978).

HARRIS, J., joins this special concurrence.