David Landis GIPSON, As Administrator of the Estates of Ronald Allen Aytes, Sr., Kathy Lee Aytes, Saundra Jinette Aytes, and As Guardian and Conservator For Ronald Allen Aytes, Jr., and Michelle Deann Aytes; James D. McDaniel, A Minor Child by Stanley J. McDaniel A Next Friend; Stanley J. McDaniel and Betty J. McDaniel, Appellants,

v.

STATE of Iowa, Appellee.

No. 86–1077.

Supreme Court of Iowa.

Feb. 17, 1988.

Jerry R. Foxhoven of Foxhoven & McCann, and Michael Sellers and Steven C. Kaiser, Des Moines, for appellants.

Thomas J. Miller, Atty. Gen., John Perkins, Asst. Atty. Gen., and Robin G. Formaker, Asst. Atty., Ames, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and NEUMAN, JJ.

CARTER, Justice.

Two groups of claimants, the Aytes plaintiffs, who are the decedents' estates of four members of the Aytes family and the guardian and conservator of two other members of the Aytes family, and the McDaniel plaintiffs, all appeal from the judgment entered on a jury verdict finding the State free from any liability arising out of a two-car accident near Mt. Ayr.

Plaintiffs contend that the trial court erred in its instructions to the jury concerning the legal significance of the State's alleged failure to comply with the requirements of the *Manual on Uniform Traffic Control Devices* as specified in Iowa Code section 321.252 (1985) and Iowa Code section 321.253 (1985). The State urges that the trial court's instructions on that issue were adequate and that, in any event, it was discharged from liability by a release form executed by all plaintiffs. The State also urges that it is totally exempt from any liability as to the McDaniel plaintiffs under Iowa Code section 668.10(1) (1985) because those actions were filed after July 1, 1984.

On April 9, 1983, an automobile driven by Kenneth Carson crossed the centerline on Highway 2 west of Mt. Ayr and collided with an automobile driven by Ronald

Aytes, Sr. Ronald Aytes, Sr., was killed from the resulting collision. Also killed were Saundra Aytes, Christina Aytes, and Kathy Lee Aytes, passengers riding in the Aytes' automobile. Ronald Aytes, Jr., and Michelle Aytes, minor children of Ronald Aytes, Sr., who were also passengers in the automobile sustained personal injuries. James McDaniel, a passenger in the Carson automobile was also injured in the collision.

On July 8, 1983, the Aytes plaintiffs, being the administrator of the deceased members of the Aytes family and the guardian and conservator of the injured minor children, filed a petition against the administrator of Kenneth Carson, seeking damages for injuries and wrongful death. The State of Iowa was joined as an additional defendant in the Aytes action on June 13, 1984. James McDaniel and his parents sued the Carson estate on July 27, 1984, and the State of Iowa on January 24, 1985. The Carson estate settled with plaintiffs prior to trial and was identified in the verdict form as a "released party" pursuant to Iowa Code sections 668.2 and 668.-3(2) (1985).

Evidence offered at trial indicated that the Carson automobile had gone off the road onto a soft, muddy highway shoulder. In recovering from that circumstance, the automobile lurched across the centerline colliding with the Aytes automobile which was being driven in the opposite direction. Among the theories of negligence which the plaintiffs have asserted against the State are common-law claims of failing to exercise reasonable care in maintaining the surface of the shoulder of the roadway and failing to establish adequate warning signs, symbols or striping to apprise motorists of the dangerous shoulder conditions. It was specifically alleged by the Aytes plaintiffs that the State failed to provide such warning signs as are required by Iowa Code section 321.253 (1985).

I. *Claims of the McDaniel Plaintiffs.*

Both the Aytes plaintiffs and the McDaniel plaintiffs assign as error the trial court's overruling of objections to a jury

instruction pertaining to the legal significance of the alleged failure of the State to comply with the requirements specified in the *Manual on Uniform Traffic Control Devices*. Our examination of the record reveals that the district court believed Iowa Code section 668.10(1) (1985) exempted the State from liability on the McDaniel claims based on failure to install adequate warning devices. This conclusion was premised on the fact that, although the Aytes' claims against the State were filed before July 1, 1984, the McDaniels' actions were filed after that date. *See Metier v. Cooper Transp. Co.*, 378 N.W.2d 907, 911 (Iowa 1985) (provisions of section 668.10(1) applicable to all cases filed on or after July 1, 1984). In instructing on the claims of the McDaniel plaintiffs, the trial court did not submit any issues involving failure of the State to install adequate signs, edge-line striping, or other warning devices.

The only assignment of error urged on appeal by the McDaniel plaintiffs concerns an instruction on an issue not submitted to the jury in their cases. They make no claim that the failure to submit that issue was error. Under these circumstances, any infirmity in the challenged instruction lacks any legal significance with respect to McDaniels' right to recover. We therefore affirm the judgment on the McDaniels' claims and only consider the instruction issue as it affects the Aytes plaintiffs.

II. *Instructions to the Jury on Alleged Violations of the Manual on Uniform Traffic Control Devices (the Aytes Claims).*

In instructing the jury, the trial court gave common instructions on the McDaniel and Aytes claims based on alleged common-law negligence for failure to properly maintain the shoulder. In addition, on the claims of the Aytes plaintiffs only, the following additional instructions were given concerning their allegations that the State improperly failed to erect soft shoulder signs and edge-line striping:

### INSTRUCTION NO. 17

In addition [to their common-law claims], the Aytes plaintiffs assert that the State was negligent in not posting a soft shoulder sign or not installing or maintaining edgeline striping. The particulars of these grounds of negligence are explained in other instructions....

### INSTRUCTION NO. 19

As to the [Aytes] plaintiffs' allegations that the State was negligent in not installing edgeline striping and in not posting a soft shoulder sign, you are instructed that these claims are to be evaluated as to whether that decision complied with generally recognized engineering or safety standards.

If you find that not installing edgeline striping or not posting such signs complied with such standards, then that is evidence the State was not negligent. If, on the other hand, you find that this does not comply with such standards, then that is evidence the State was negligent.

### INSTRUCTION NO. 21

Evidence has been introduced concerning certain standards, policies and procedures set forth in the *Manual on Uniform Traffic Control Devices*....

If you find that the State has failed to comply with such Manual or policies, then that is evidence the State was negligent. If, on the other hand, you find that they have complied, then that is evidence the State was not negligent.

The Aytes plaintiffs objected to the form of Instruction No. 21 on the ground that the jury should have been advised that a violation of the sign manual constituted negligence per se rather than merely being some evidence of negligence. On appeal, they urge that the court's failure to alter the instruction in response to that objection was error.

In seeking to uphold the challenged instruction, the State urges that the *Manual on Uniform Traffic Control Devices* is only a flexible guide which, by itself, does not determine the necessity of when and where to place the traffic control devices

which it describes. The final determination on that issue, the State urges, is measured by the independent engineering judgment of the responsible public officials. This is the view of the uniform manual espoused in *Toumberlin v. Haas*, 236 Kan. 138, 144, 689 P.2d 808, 814 (1984).

The role which the *Manual on Uniform Traffic Control Devices* plays in determining the legal obligations of a public agency mandated by law to employ it was considered in *Schmitt v. Clayton County*, 284 N.W.2d 186 (Iowa 1979). Although that case involved the responsibility of local authorities, we believe that it also provides an accurate standard for determining the similar obligations placed on state officials. Local authorities are statutorily mandated to conform to the uniform manual by Iowa Code section 321.255 (1985). Use of the manual by state officials is mandated by section 321.252 and section 321.253. For purposes of determining the legal obligations of the respective public agencies, we find that the statutory schemes are identical.

In *Schmitt*, we recognized that the uniform manual itself incorporates an exercise of engineering judgment. Notwithstanding that fact, we unequivocally stated:

> [T]he duty of the [public agency] is of a general nature, involving an exercise of due care under the circumstances to warn traffic of changing or dangerous road conditions. While engineering knowledge and skills may well be utilized by the [public agency] in fulfilling its obligation, the ... obligation is stated in broader terms. *Compliance with* recognized or, in the case of the manual, *statutorily mandated engineering procedures* would be most relevant to whether [the public agency] has properly discharged its function. [Its] duty is not necessarily coterminous with [an] engineer's professional judgment. The ultimate question is whether the public had reasonable warning of the road conditions it would face, not whether the ... engineer acted within the bounds of his professional discretion, although there would or could be much evidence common to these determinations.

*Id.* at 189 (emphasis added). Based on what was decided in *Schmitt*, we conclude that the applicable statutes (§§ 321.253 and 321.255) which adopt the uniform manual also adopt by incorporation the engineering standard which the manual contains. Notwithstanding this incorporation, *Schmitt* indicates that the engineering determinations which are required to implement the manual are not dispositive of the legal liability of the public agency. The trial court's instruction on the legal significance of the uniform manual is therefore not subject to the objection lodged by plaintiffs.

The legal obligation of the public body to install adequate warning devices continues to be a duty of "ordinary care under the circumstances." *Schmitt*, 284 N.W.2d at 189. Other instructions, not objected to by plaintiffs, covered the State's obligation of due care in the installation of warning devices. No other standard of care was referred to in the instructions. Consequently, the marshaling instruction necessarily required application of the "due care" standard in determining all of the negligence claims. The requirements of the uniform manual were properly accorded evidentiary significance in making those determinations. This procedure accords with the standard approved in *Schmitt*. We find no basis for reversing the judgment of the district court. The judgment is affirmed.

AFFIRMED.