# IN THE COURT OF APPEALS OF IOWA

No. 20-1304
Filed November 3, 2021

**THOMAS HOUDEK and DIANE HOUDEK, AS ADMINISTRATORS OF THE ESTATE OF THOMAS JOHN ARTHUR HOUDEK,**
        Plaintiffs-Appellants,

**vs.**

**STATE OF IOWA,**
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Floyd County, Gregg R. Rosenbladt, Judge.

        Administrators of an estate appeal the dismissal of their wrongful death action against the State.  **AFFIRMED.**

        David H. Skilton of Cronin, Skilton & Skilton, P.L.L.C., Charles City, for appellants.

        Thomas J. Miller, Attorney General, and Robin G. Formaker, Assistant Attorney General, and David S. Gorham, Special Assistant Attorney General, for appellee.

        Considered by Mullins, P.J., May, J., and Doyle, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MAY, Judge.**

The administrators of the estate of Thomas John Arthur Houdek (T.J.) appeal the dismissal of their claims of negligence and gross negligence against the State of Iowa. We affirm.

**I. Background Facts**

T.J. drove his motorcycle northbound on Quarry Avenue/Road near Floyd, Iowa. He came to an intersection with Highway 18/27, a four-lane road. Here is an aerial view of the intersection:



T.J. safely crossed the eastbound lanes. Then he stopped at a stop sign in the median. Then he pulled out to cross the westbound traffic and was struck by a semi. T.J. died from his injuries.

The administrators of T.J.'s estate brought this suit against the State. They alleged the State was negligent and grossly negligent[1] for (1) "failing to design an intersection which was safe and free of design defects"; (2) "[f]ailing to warn and

---

[1] "Under our common law 'there are not degrees of care or of negligence in Iowa,' . . . and we thus do not recognize a tort cause of action based on 'gross' negligence as distinct from 'ordinary' negligence." *Lukken v. Fleischer*, 962 N.W.2d 71, 81 (Iowa 2021) (citations omitted).

safeguard the public of the dangerous conditions of th[e] intersection"; (3) "[f]ailing to maintain signage in such a way that the signs are not misleading, exacerbating the dangerous condition, and causing confusion"; (4) "[f]ailing to provide supervision of a dangerous intersection under its statutory duty to maintain the roadway by creating an imminent danger on a public roadway"; (5) "[f]ailing to take reasonable precautions and safety measures, under the circumstances, to protect the public from the hazards caused by this intersection"; (6) "[a]bandoning without supervision the site and failure to warn of the known danger posed by this intersection"; (7) "[f]ailing to provide ordinary care of the duty to provide a safer intersection, which was apparent because of the video-taping of the intersection, and signs should have been posted both lowering speed and identifying to the public what had been determined by the [Iowa Department of Transportation] that the intersection was under evaluation and dangerous conditions present, such as flashing warning lights and signs that have been posted at other dangerous intersections, including but not limited to: [examples]"; and (8) "[f]ail[ing] to maintain the signage so as not to be confusing. Instead of warning the public, the signage that was present gave a false impression that the intersection was normal and customary, which it was not." The estate also alleged the State was grossly negligent because "the State knew of the defects in [the intersection's] design, the danger to the public, and its wanton failure to communicate between its divisional department structure which, effectively, created a trap to the public."

The State moved for summary judgment on several grounds, including (1) traffic-control device immunity; (2) design-and-construction immunity;

(3) discretionary-function immunity; and (4) the public-duty doctrine. The district court granted the motion. The administrators appeal.

## II. Scope and Standard of Review

Our review is "for correction of errors at law." *See Rieder v. Segal*, 959 N.W.2d 423, 425 (Iowa 2021). The district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 425–26 (citation omitted).

## III. Discussion

The district court concluded summary judgment was appropriate for several reasons, including the public-duty doctrine. Because we agree that the public-duty doctrine precludes liability for the State, we affirm.

The public-duty doctrine "precludes liability to individuals based on breach of a duty the state owes to the public at large." *Estate of McFarlin v. State*, 881 N.W.2d 51, 58 (Iowa 2016). The State argues the doctrine applies here because any duty the State owes to maintain safe public roads is "a duty the state owes to the public at large." *See id.*; *see also Johnson v. Humboldt Cnty.*, 913 N.W.2d 256, 261 (Iowa 2018) ("Any duty to remove obstructions from the right-of-way corridor adjacent to the highway would be a duty owed to *all* users of this public road. It would thus be a public duty.").

But in *Fulps v. City of Urbandale*, our supreme court clarified that "the public-duty doctrine generally comes into play only when there is a confluence of two factors." 956 N.W.2d 469, 473 (Iowa 2021).

> First, the injury to the plaintiff was directly caused or inflicted by a third party or other independent force. Second, the plaintiff alleges a governmental entity or actor breached a uniquely governmental duty, usually, but not always, imposed by statute, rule, or ordinance to protect the plaintiff from the third party or other independent force. Even then, the existence of a special relationship will negate the public-duty doctrine.

*Id.* at 473–74.

We believe the *Fulps* criteria are met here. First, we note T.J.'s injuries were inflicted by a semi. And no one contends the semi was owned or operated by the State.[2] So, in the words of *Fulps*, the "injury to the plaintiff was directly caused or inflicted by a third party or other independent force." *Id.* at 473.

Next, we note the administrators' allegations focus on the State's failure to provide safe public roads. Specifically, the administrators claim the State failed to design an intersection that would have prevented the collision between T.J. and the semi. In the words of *Fulps*, then, the administrators allege "a governmental entity or actor"—the State—"breached a uniquely governmental duty"—the duty to provide safe public roads—that would have "protect[ed T.J.] from [a] third party or other independent force," the semi. *See id.* at 473–74.

Finally, the administrators do not claim "the existence of a special relationship" that could "negate the public-duty doctrine." *See id.* at 474. Rather,

---

[2] In their petition, the administrators allege the semi was driven by Joshua Brood and owned by Rooney Transport, Inc. No one contends Brood or Rooney were agents of the State.

like other travelers on public roads, T.J. was a member of the general public. Any duty owed to T.J. "would be a duty owed to *all users* of this public road," not to any "particularized class." *Johnson*, 913 N.W.2d at 261–62; *see also McFarlin*, 881 N.W.2d at 61 ("Boaters may traverse the lake freely and come and go as they please, *like motorists using public roads* . . . . Boaters at Storm Lake, *like motorists driving on Iowa roadways*, are members of the general public, not a special class of 'rightful users of the lake' for purposes of the public-duty doctrine." (emphasis added)).

Given these circumstances and the court's guidance in *Fulps*, we believe the public-duty doctrine applies here. Still, we have considered all of the administrators' counterarguments. First, the administrators draw our attention to the Iowa Tort Claims Act (ITCA), which is codified as Iowa Code chapter 669 (2018). The administrators focus on section 669.14(8), which immunizes[3] the State from certain claims "of negligent design . . . of a highway." As the administrators note, though, section 669.14(8) does not provide the State with immunity for "claims based on gross negligence." From this, the administrators infer that the public-duty doctrine is not "available where there is a claim of gross negligence."

---

[3] Under the doctrine of sovereign immunity, the State of Iowa "began from a position of complete immunity" to tort suits. *Wagner v. State*, 952 N.W.2d 843, 856 (Iowa 2020) (citation omitted). But then the legislature chose to "waive[] that immunity *on a limited basis* by enacting" the ITCA. *Id.* (emphasis added). Even so, section 669.14 contains several "exceptions" to the ITCA's waiver. So, if a claim falls within one of those exceptions, the ITCA waiver does not apply and, therefore, the State's sovereign immunity *does* apply. As shorthand, though, we just say the ITCA exceptions provide the State with immunity. For present purposes, at least, we think the net effect is the same.

We disagree. The administrators do not cite—and we have not found—any authority for a gross-negligence exception to the public-duty doctrine. Indeed, in *Johnson*, our supreme court declined to recognize a similar exception. 913 N.W.2d at 266. There, the plaintiff argued the public-duty doctrine only "prevents the recognition of a common law duty of reasonable care" and, therefore, does not preclude "nuisance and premises-liability claims." *Id.* As the *Johnson* court explained, however, when the public-duty doctrine applies, "there is no liability" for the State. *Id.* And, the court held, "'no liability' includes these other tort claims" for nuisance and premises-liability. *Id.* Likewise, we think "no liability" includes the administrators' gross-negligence claims.

In the administrators' view, though, the pubic-duty doctrine's "common law rule" cannot provide protections broader than those available under the ITCA. Otherwise, the administrators suggest, the ITCA's "clear words would have no meaning." We disagree. ITCA immunities and the pubic-duty doctrine are different animals. They provide different kinds of protection: while ITCA immunities protect the State "from liability for breach of an otherwise enforceable duty to the plaintiff," the public-duty doctrine "asks whether there was any enforceable duty to the plaintiff in the first place." *See id.* at 264 (citation omitted). And we see no reason why ITCA-immunity protections cannot have a different scope than public-duty-doctrine protections.

The administrators also draw our attention to *Breese v. City of Burlington*, in which our supreme court reaffirmed that "[w]here the affirmative acts of a public employee actually cause the harm, the public duty doctrine does not apply." 945

N.W.2d 12, 20 (Iowa 2020). The administrators argue this applies here because "gross negligence represents such an affirmative act."

We disagree for several reasons. First, as explained, we do not think "gross negligence" claims are categorically excluded from the public-duty doctrine.

Second, the administrators do not explain why "gross negligence" requires an "affirmative act" rather than a failure to act. Indeed, when describing the State's alleged gross negligence, the administrators focus on various "*failure*[s] to act affirmatively," specifically: (1) "choosing not to act" on information that the intersection was dangerous; (2) declining to erect signs; (3) declining to reduce the speed limit; and (4) failing "to monitor the crash data and the intersection."

Finally, when discussing the "distinction between affirmative actions and omissions," the *Breese* court said it "is clear is that we have generally applied the public-duty doctrine when the allegation is a government *failure to . . . protect the general public from somebody else's instrumentality*." *Id.* at 21 (emphasis added). And that is precisely the case before us; the administrators allege the State failed to protect the general public—of which T.J. was a member—from "somebody else's instrumentality," a semi.[4] Under *Breese*, as well as the *Fulps* criteria, those allegations fit squarely within the public-duty doctrine.

---

[4] We have not overlooked the administrators' citation to *Skiff v. State*, 479 N.Y.S.2d 946, 948 (N.Y. Ct. Cl. 1984), a case mentioned by our supreme court in *Johnson*, 913 N.W.2d at 267. *Skiff* involved a one-car accident in which the plaintiffs' damages were caused by a drainage ditch that "was created by the State." 479 N.Y.S.2d at 951 (noting "there is ample proof that the ditch, which was created by the State and of which it is presumed to have notice, was inherently dangerous and constituted a trap or snare"). Unlike here, the plaintiffs in *Skiff* were not harmed by a privately-owned semi. The instrumentality of damage in *Skiff* was not somebody else's. It was the State's own ditch. *Id.* So *Skiff* is not relevant here.

## IV. Conclusion

Because the public-duty doctrine applies, the administrators' claims against the State cannot prevail. The district court was right to grant summary judgment.

**AFFIRMED.**

---

We also acknowledge the administrators' citation to *Schmitt v. Clayton Cnty.* 284 N.W.2d 186 (Iowa 1979). To be sure, *Schmitt* bears some factual similarities to this case. For example, like this case, *Schmitt* involved a motor vehicle accident. *Id.* And, as here, the plaintiff in *Schmitt* claimed the government defendant failed "to place adequate and proper warning signs" at a dangerous place on a road. *Id.* But there are also factual differences—including the important fact that *Schmitt* involved a one-vehicle accident. *Id.* The *Schmitt* accident didn't involve a third-party instrumentality like the semi that hit T.J. Even more important, though, the *Schmitt* court did not *address* the public-duty doctrine. Indeed, the *Schmitt* defendant *acknowledged* it owed a duty in tort. *Id.* at 189 (noting the county's contention that "its signing should be evaluated according to a 'reasonable' professional engineering judgment standard rather than a 'reasonable person under the circumstances' test"). So *Schmitt* does not control where, as here, the government defendant asserts the public-duty doctrine.