Carl Richard **COOK**, Appellee,

v.

**STATE of Iowa, Appellant.**

No. 87–241.

Supreme Court of Iowa.

Nov. 23, 1988.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., Richard E. Mull and David A. Ferree, Asst. Attys. Gen., for appellant.

Rick L. Olson, Des Moines, for appellee.

Mary F. Whitman, Des Moines, for amicus curiae Iowa State Ass'n of Counties.

SCHULTZ, Justice.

The State appeals from the recovery made by Carl Richard Cook under the Iowa Tort Claims Act, Iowa Code chapter 25A (1981). Cook suffered personal injuries as a result of an accident that occurred on

August 8, 1981, at the intersection of state primary highways 61 and 78 in Louisa County. The claims for wrongful death of three passengers in the Cook van were joined in this action and also tried to the court. They are not an issue on appeal because of posttrial settlements, however.

At this intersection, highway 61 is a two-lane road with a 24 foot paved surface. Highway 78 is an east-west road perpendicular to highway 61. It ends at its intersection with the west edge of highway 61. To the east of this intersection is Louisa County road H–22, which does not line up perfectly with highway 78, but is offset 12 feet to the north, causing its southern edge to approximate the center line of highway 78. Eastbound traffic on highway 78 is required to stop by stop signs at this intersection. However traffic on highway 61 has no required stop. The topography of the roadway at the intersection and on highway 78 for over 1,400 feet prior to the intersection is flat and straight. The highway was dry and visibility was good at approximately 2:30 p.m. when this accident occurred.

The accident occurred when Cook was driving a van eastbound on 78. Cook ran the stop sign at the intersection and collided with and upset a loaded semitruck that was northbound on highway 61. Beginning just eleven feet from the stop sign and in the opposing lane of traffic, the van left forty-one feet of skid marks to the point of the collision. An alcohol analysis of Cook's blood showed an alcohol concentration of 158 milligrams per deciliter.

The trial of this case was to the court and was bifurcated so that the liability issues of all parties and damages for one of the plaintiffs were tried to one judge and the damage issue for Cook and the remaining plaintiffs was tried to another judge. Defendant appeals only from the liability issues. The court found that the State was negligent in failing to place "stop ahead" signs on both sides of the roadway and in placing such a sign on the right-hand side of the road 1,305 feet from the intersection, rather than 750 feet from the intersection. The Court found that the plaintiff was neg-

ligent to some degree in the manner he operated his motor vehicle. The Court apportioned 90% of the negligence to the State and 10% to the plaintiff. It ordered judgment in favor of Cook on the liability issue and provided that when damages were later determined, they should be reduced by 10% to represent the apportionment of negligence. The Court also found the State was entitled to a 10% contribution from Cook for any damages awarded to the other plaintiffs.

On appeal, the State raises four categories of issues. It contends (1) it is entitled to immunity from suit because of exceptions to state tort liability under Iowa Code chapter 25A; (2) the Court erred in evidentiary rulings; (3) the evidence was insufficient to support a finding of the State's negligence and proximate cause and the allocation of fault; and (4) the district court erred by summarily overruling its posttrial motions without any explanation.

■ I. *Immunity from suit.* The State Tort Claims Act has not abrogated sovereign immunity entirely. The State may be sued only in the manner and to the extent consent has been given by the legislature. *Lloyd v. State,* 251 N.W.2d 551, 555 (Iowa 1977). If the State is covered by one of the statutory exceptions of Iowa Code section 25A.14, the action must be dismissed. *Id.* at 556.

The State maintains that plaintiff's claims fall within subsections 8 and 9 of section 25A.14 which retains immunity for the State generally for claims arising from negligent design or specification, the negligent adoption of design or specification, or negligent construction or reconstruction of a highway or public improvement that was constructed or reconstructed in accordance with a generally recognized engineering or safety standard, criteria or design theory in existence at the time. The trial court rejected this contention, simply indicating that the State's negligence arose from its maintenance function as opposed to its design function.

The question before us is whether the State's conduct falls within the statutory

exceptions. The conduct in question involves the State's action in picking the site of the "stop ahead" sign and in failing to place another such sign on the opposite side of the road.

We conclude that the exceptions do not fit such conduct. Subsections 8 and 9 speak to the design, construction or reconstruction of a highway or public improvement in accordance with accepted standards which later fall below newer standards. These exceptions reinstate sovereign immunity when it is claimed that the State was negligent for failing to upgrade or improve facilities so that they meet present safety standards. In this case, the plaintiff does not assert that the State failed to upgrade or make improvements. Rather, he claims the placement of the signs was unreasonable and constituted negligent conduct. This conduct simply does not fall within the ambit of subsections 8 and 9.

II. *Evidentiary rulings.* The State disputes the admission of testimony indicating previous accidents may have occurred at the intersection and the opinions of two accident-reconstruction experts. We address these in turn.

■ A. *Earlier observation.* The plaintiff presented the testimony of a local school bus driver who traversed this section of road 756 times per school year for the three years prior to the accident. Over the State's objection, she was allowed to testify that she had observed the barrel-mounted stop sign moved across the highway from the southwest to the southeast corner of the intersection eight to ten times yearly, and that she had seen skid marks up to and through the regular barrel position. She also stated that she had notified the county maintenance supervisor of the stop sign's displacement. The bus driver agreed that she had never seen any of the events that led to the barrel's displacement nor did she have any personal knowledge of the events that caused its movement. The State objected to the testimony's relevance because there was no showing of similar circumstances between the prior observations and this accident.

Although it is debatable whether evidence of barrel displacements and skid marks evince prior accidents occurred, both parties on appeal treat this testimony as evidence of prior accidents. We shall also. Their dispute is whether sufficient similarity of circumstance must be shown as a foundation for the admission of this evidence.

In this case, the plaintiff limited the offer of proof to the sole purpose of showing that the State received notice that the stop sign had a visibility and noticeability problem. The evidence was valuable to the plaintiff because the State is not subject to liability for a road defect unless it has actual or constructive notice of the condition. *Koehler v. State,* 263 N.W.2d 760, 765 (Iowa 1978).

When the testimony of prior accidents is admitted to show evidence of a dangerous condition, our rule requires a foundational showing that the prior accidents occurred under substantially the same circumstances. *Lindquist v. Des Moines Ry. Co.,* 239 Iowa 356, 368, 30 N.W.2d 120, 126 (1947). The probative value of previous accidents rests in the likelihood that the same conditions caused the accident under litigation.

■ We have a slightly different situation when the sole purpose of the offered testimony is to show that the alleged tortfeasor had notice of an allegedly dangerous condition. We agree that the proof of similarity may be more relaxed when the offer is confined to notice. E. Cleary, *McCormick on Evidence* § 200 at 589–90 (3d ed. 1984).

The trial court ruled that the evidence had some probative value. It is ordinarily within the trial court's discretion to decide whether to exclude evidence on grounds of relevancy. *Eickelberg v. Deere & Co.,* 276 N.W.2d 442, 445 (Iowa 1979); *State v. Tech,* 240 N.W.2d 658, 661 (Iowa 1976). The majority of the members of this court conclude that the evidence was not plainly irrelevant and there was no abuse of discretion by the trial court in admitting it.

Consequently, we hold the trial court did not commit error on this ground.

B. *The admission of expert testimony.* The State claims the trial court erred in admitting, over objection, the testimony of two plaintiff's expert witnesses who gave opinion testimony. In its statement of the issue, the State seems to present a shotgun attack against all of the witnesses' testimony. However, in its argument the State does take exception to specific admitted testimony. We would have preferred the State have taken a rifle approach to the claimed inadmissible testimony instead.

At the outset, we believe that most of the State's complaint was answered in *Grismore v. Consolidated Products Co.,* 232 Iowa 328, 5 N.W.2d 646 (1942). We indicated there that the receipt of opinion evidence and the extent to which it is received are matters resting largely in the administrative discretion of the court. *Id.* at 342, 5 N.W.2d at 654. We stated that "[c]ourts should be, and are, very loathe to interfere with such discretion unless it has been manifestly abused to the prejudice of the complaining party." *Id.*

■ There is no merit in the State's allegation that Slade Hulbert and George Brown lack qualifications as experts. While neither is an engineer, Hulbert is a self-described human factors consultant, experienced with governmental entities determining traffic control device placement. Brown is an experienced accident-reconstruction expert. The trial court did not abuse its discretion in allowing testimony of the noticeability or proper placement of the various signs. The State's arguments concerning the admissibility of much of this evidence would be more appropriately argued to the trial court in the context of its credibility.

■ The State also claims that both witnesses were permitted to testify over proper objection, that Cook's driving behavior was reasonable under the circumstances and that the State's conduct showed callous disregard. It urges that this testimony goes to the legal standards of negligence. The State's brief follows a general approach and makes only one specific reference to the appendix. Matters contained in a brief point must be sufficient in and of themselves to lay before the court, without independent investigation, the precise ruling complained of and the law applicable. Consequently, we speak to this matter generally. Opinions may embrace "an ultimate issue to be decided by the trier of fact," Iowa R. of Evid. 704, but this is subject to the limitation that "[e]xperts are not to state opinions as to legal standards." Iowa R.Evid. 704 committee comment (1983). On retrial, if the same evidence is offered, the State will have the opportunity to restate its objections.

Finally, the State claimed that Hulbert's deposition was inadmissible because it was hearsay. The State took the deposition prior to trial and the plaintiff offered it into evidence. Iowa Rule of Evidence 804(b)(1) allows an exception to the hearsay rule when the testimony was given by a witness at a deposition, provided the party against whom the testimony is now offered, had an opportunity to develop it by examination and that the "declarant is unavailable as a witness." The State maintains that there was no showing made by the plaintiff that the witness was unavailable to testify in person.

■ The plaintiff's position is that the witness was living in California at the time of the trial and that the provision in Iowa Rule of Civil Procedure 144(c) would apply. Rule 144(c) provides:

Any part of a deposition, so far as admissible under the rules of evidence, may be used upon the trial ...

(c) For any purpose, if the court finds ... that deponent is out of the state or more than one hundred miles distant from the trial....

The State points out that Rule 144 only allows the introduction of the deposition at trial "so far as admissible under the rules of evidence." They urge that it is not admissible under Rule 804(b)(1) without a showing of efforts made to produce the witness at trial.

We believe that Rule 144(c) was intended to create its own exception to the hearsay rule, at least insofar as civil litigation is concerned.[1] All that is required under the rule is a showing that the witness is out of the state. The reference in Rule 144 to admissibility under the rules of evidence refers only to the other applicable rules of evidence but does not refer to an overall hearsay objection to the entire deposition. Thus, we hold that the deposition was admissible under Rule 144 without a determination of unavailability under Rule 804.

III. *Determination and the Allocation of Fault.* The State generally claims that there was neither substantial evidence nor proper application of legal standards of care to support the finding that the State bore 90% of the fault for the accident. It specifically challenges both the finding of any negligence or proximate causation on its part and the court's allocation of fault.

A. *Substantial evidence of the State's negligence.* The State contends that the plaintiff did not present substantial evidence of negligence by the State. It urges that the "stop ahead" sign was placed within the limits prescribed by the statutorily required manual. It urges that this stop sign is visible for a sufficient distance to permit the driver to bring a vehicle to a halt at the stop sign, consequently, a "stop ahead" sign is not required. It also notes that they are afforded some degree of discretion as to the placement of signs and that such acts carry a presumption of validity. Finally, it urges that the sole proximate cause of this accident was Cook's reckless driving combined with his intoxication. Throughout their argument, they challenge the credibility of plaintiff's expert witnesses.

The State's strong contentions must fail on appeal. Whether we agree with the trial court's findings of fact is not the issue. Findings of fact in a law action are binding upon the appellate court if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

The finding of the State's negligence arises out of the placement and omission of traffic warning signs. In the context of a claim against a local government, we have explained that it does not have absolute discretion regarding signs. In *Malloy v. Guthrie County*, 368 N.W.2d 121 (Iowa 1985), we stated:

> Their decision to erect signs and if so which signs to erect, or not to erect signs, is subject to the pervasive requirement of ordinary care under the circumstances. Their decisions would carry the initial presumption of validity which attends acts of public officials, McCormick, *Evidence* § 343, at 807 (2nd ed. 1972), but the plaintiff could introduce expert or other evidence endeavoring to generate a fact question as to want of due care in the decision the officials made or, in an extraordinary case, to demonstrate want of due care as a matter of law in the decision they made.

*Id.* at 123–24. In the present case, plaintiff introduced opinion testimony of two expert witnesses regarding the lack of ordinary care exercised in signing this intersection. Our opinion of the credibility of these witnesses and the strength of plaintiff's evidence on the State's alleged wrongdoing does not allow us to override the trial court's finding of fact when the record indicates the generation of fact issues.

In its ruling, the trial court stated, "[t]hat pursuant to the *Manual on Uniform Traffic Control Devices*, the 'stop ahead' signs should have been placed approximately 750 feet from the intersection, rather than 1,320 feet as the single 'stop ahead' sign was placed on the day of the collision." Previously, the court had concluded that a violation of the manual by the State was evidence of negligence. We are unsure whether the trial court ruled that the state violated the manual by the placement of the sign or simply found that in the exercise of ordinary care, the sign should have been placed at the 750 feet mark rather than at 1,320 feet. The man-

**1.** Because of the confrontation clause implications present in criminal cases, but not present here, we decline to expend this exception beyond civil litigation. *See generally* 11 J. Moore & H. Bendix, *Moore's Federal Practice* § 804.03[5], at 258 (1988).

ual governs the placement of "stop ahead" signs and notes that "in rural areas warning signs should normally be placed about 750 feet in advance of the hazard or conditions. On high speed roads, and particularly on freeways, advance warning distances may have to be as great as 1,500 feet or more." A placement at approximately 750 feet is not mandated. "[T]he engineering determinations which are required to implement the manual are not dispositive of the legal liability of the public agency." *Gipson v. State*, 419 N.W.2d 369, 372 (Iowa 1988). As this action is reversed on other grounds and remanded for a new trial, we need not decide whether the trial court erred in this respect. On retrial, the trial court should determine whether the state exercised ordinary care in the placement of the sign, keeping in mind the presumption of acting correctly as previously discussed.

In summary, we will not set aside plaintiff's judgment as a matter of law based on the failure of the plaintiff's proof of negligence and causation. This case must be retried. The evidence in this new trial will allow the trier of fact to make these determinations anew on the record before it.

B. *The allocation of fault.* The State assails the trial court's allocation of fault, claiming that it was incomprehensible that the trial court could acknowledge Cook's blood alcohol content and then assign so little fault to him. Additionally, the State urges that Cook failed in several regards to comply with the rules of the road and that the trial court erred by not assigning an appropriate percentage of fault.

The issue of appellate review of the fact finder's apportionment of fault is a case of first impression for this court. We first examine our general principles of appellate review of fact finding in negligence cases. In determining whether the same standards of review should be maintained on allocation of fault, we look to methods used by other jurisdictions.

In a law action, the fact finding of the trial court has the force of a jury verdict and evidence will be viewed favorably to those findings. *Brichacek v. Hiskey*, 401 N.W.2d 44, 47 (Iowa 1987). If the

findings are supported by substantial evidence, we are bound by them. Iowa R.App.P. 14(f)(1). A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence. *Beeck v. Aquaslide 'N' Dive Corp.*, 350 N.W.2d 149, 154 (Iowa 1984); *Grefe v. Ross*, 231 N.W.2d 863, 865 (Iowa 1975). This rule does not preclude inquiry into the question whether, conceding the truth of a finding of fact, a conclusion at law drawn therefrom is correct. Nor does it apply if in arriving at a finding, the trial court erred in an evidentiary ruling or in other respects. *Carson v. Mulnix*, 263 N.W.2d 701, 706 (Iowa 1978) (citations omitted). However, the determination of facts may be decided as a matter of law. While the questions of negligence and causation are to be decided by the fact finder, when the undisputed evidence and physical facts are such that all reasonable minds can reach only one conclusion, the question becomes one at law. *Reasoner v. Chicago, Rock Island & Pacific Ry. Co.*, 251 Iowa 506, 519, 101 N.W.2d 739, 747 (1960) (citations omitted).

Other jurisdictions have basically applied the same principles which we have reviewed on apportionment of fault appeals in comparative negligence cases. The Minnesota court stated, "except in those rare cases where there is no dispute in the evidence and the factfinder could come to only one conclusion, the apportionment of negligence should be left to the jury." *Riley v. Lake*, 295 Minn. 43, 58, 203 N.W.2d 331, 340 (1972). Later, the same court in reversing a jury determination that both parties were guilty of equal negligence despite the plaintiff being hit from the rear in a snow storm, indicated that it could not disturb the jury finding unless there is "no evidence which reasonably supports the verdict or it is manifestly contrary to the evidence." *Smith v. Carriere*, 316 N.W.2d 574, 575 (Minn.1982) (citations omitted). Other appellate courts have used similar language in setting out when they would interfere with the fact finder's allocation of fault. *Cruz v. Union Pacific Ry. Co.*, 707 P.2d 360, 363 (Colo.App.1985) (finding not

disturbed absent clear showing of passion, prejudice or unconscionability which may not be shown "unless reasonable minds could not have apportioned the negligence of the parties in the manner in which it was done."); *Watson v. State Farm Fire & Casualty Ins. Co*, 469 So.2d 967, 972 (La. 1985) (reversed the allocation of fault, stating the finding was "incomprehensible" and "the appropriate question is, was that finding clearly wrong or manifestly erroneous").

While it may be a matter of semantics, other courts have described their appellate review of apportionment of fault in more flexible terms. The Wisconsin Supreme Court stated:

> While no one element may be sufficient for a reversal, we think viewing the case as a whole there was a probable miscarriage of justice in this apportionment of causal negligence. Such is a proper basis for the exercise of our discretionary power [granting a new trial].

*Firkus v Rombalski*, 25 Wis.2d 352, 362, 130 N.W.2d 835, 840 (1964). Other courts have adopted language that indicates a liberal approach to granting a new trial under these circumstances. *Bofman v. Material Service Corp.*, 125 Ill.App.3d 1053, 1061, 81 Ill.Dec. 262, 268, 466 N.E.2d 1064, 1070 (1984) (apportionment against the weight of the evidence); *Warshany v. Supermarkets General Corp*, 161 N.J.Super. 515, 519–20, 391 A.2d 1271, 1273 (Law Div.1978) (apportionment clearly against the weight of the evidence); *Marcus v. Cortese*, 98 N.M. 414, 649 P.2d 482, 484 (App.1982) (review is limited to determining if the trial court's division of total negligence was within reasonable bounds).

■ We believe that it is generally a sound practice to apply established principles of determination and review to a new task. We agree that the comparative negligence concept first adopted by this court and later modified by the legislature in the enactment of Iowa Code chapter 668, requires the fact finder to expand its evaluation and fact finding duties. This is a role well suited to those who listen to the evidence and have an opportunity to evaluate the credibility of the witnesses. As to appellate review, we conclude that we should follow the same principles on the apportionment of fault that we have applied to the determination of negligence and causation. We shall apply the substantial evidence rule in appellate review of findings by a trier of facts. Such findings are supported by substantial evidence "when a reasonable mind would accept it as adequate to reach a conclusion." *Baty v. Binns*, 354 N.W.2d 777, 780 (Iowa 1984), citing *Hawk v. Jim Hawk Chevrolet–Buick, Inc.*, 282 N.W.2d 84, 87 (Iowa 1979).

■ At this point we note a suggestion for trial courts hearing cases where fault must be apportioned. For appellate courts to make an intelligent review, it is incumbent upon the trial court when instructing juries, to submit sufficient interrogatories so that on posttrial motions and on appellate review, their determinations can be properly evaluated. On cases tried to the court, it is similarly important for trial courts to fully make findings of fact on various theories of negligence for each individual party.

■ In applying these principles, we find certain problems. We believe the trial court's failure to address questions of Cook's negligence is significant in our determination. The trial court's findings of fact do not speak of any violation of the rules of the road or other negligence by Cook except the brief statement that the State "presented evidence that the driver and occupants of the van had consumed alcohol sometime prior to the collision." This is in contrast to at least five paragraphs detailing facts that lead to the conclusion that the State was negligent. In its conclusion, the court drafted six paragraphs referring to the State's duties. However, it failed to address any duty applying to Cook. In its ruling, the court outlined the State's fault and its proximate causation of the injuries in four paragraphs but mentioned Cook's fault in only one sentence.

> Because the driver Cook had consumed alcohol prior to the collision and he was unfamiliar with the intersection of high-

way 78 and 61, he was to some degree negligent in the manner he operated his motor vehicle.

The court then went on to apportion the negligence, assigning 90% to the State and 10% to Cook.

In a posttrial motion, the State asked the court in fifty-seven separate and distinct paragraphs to amend and enlarge its findings of fact and conclusions of law. The motion sought the court to acknowledge facts of Cook's blood alcohol analysis showing a level of 158 milligrams per deciliter of blood alcohol approximately one and a half hours after the accident and that he was impaired by alcoholic intoxication at the time of the accident. It further attempted to establish what appeared to be undisputed facts of Cook's skid marks and their location, his failing to obey stop and yield signs, the topography of the road, the unobstructed view of the stop sign from at least 1,400 feet in advance of the sign and the impact resulting in upsetting a loaded semitruck and trailer. The State also sought findings otherwise bearing on Cook's lack of control and his failure to keep a lookout and to reduce his speed to a reasonable rate when approaching and traversing an intersection. In overruling the motion totally, the trial court did not consider the individual points and only referred to the reasons set out in the plaintiff's resistance to the motion.

■■■ The void in the court's findings of fact as to whether Cook was negligent in various respects directly bears on the allocation of fault. The record before us presents numerous issues of fact regarding Cook's negligence in speed, lookout and control. It appears from the undisputed testimony of eyewitnesses and from the physical facts, that Cook failed to stop at a stop sign and failed to yield the right of way to an oncoming vehicle in violation of Iowa Code section 321.322 (1981). A violation of this section constitutes negligence and is not just prima facia evidence of negligence. *Willemsen v. Reedy*, 215 Iowa 193, 196, 244 N.W. 691, 692 (1932).

We hold that the trial court erred as a matter of law in failing to conclude that Cook was negligent for violating section 321.322. The trial court's failure to make specific findings of fact as to whether Cook was intoxicated or violated the other noted rules of the road passed a cloud of doubt on the court's allocation of fault. We do not need to determine whether reasonable minds would accept the premise that the trial court's allocation of negligence could be reasonably inferred from the evidence. The trial court did not consider Cook's failure to stop at the stop sign in its determination of negligence and consequential allocation of fault. Because we conclude this was established as a matter of law, the judgment of the trial court must be reversed.

In summary, we reverse the judgment entered by the trial court and remand for a new trial. Because the matter of damages was bifurcated, the new trial will be restricted to the issue of liability, if any.

IV. *Posttrial motions.* Because this action is remanded for a new trial, we need not address the State's complaint concerning the trial court summarily overruling its posttrial motion.

REVERSED AND REMANDED.

NEUMAN, Justice, (dissenting).

Though I share the majority's dismay at the result reached in this case, I cannot yield to the reason advanced for upsetting the trial court's verdict. The question is not whether Cook, as a matter of law, violated the right-of-way provisions of Iowa Code section 321.322. Cook concedes he ran the stop sign. The question is whether, and to what extent, the State's lack of due care contributed to, or caused, Cook's failure to heed the traffic signal. That determination, of course, lies somewhere on a continuum from zero to 100 percent. To suggest that Cook's fault can be determined as a matter of law, or that the court committed reversible error by failing to recognize Cook's traffic violation, is to miss the point of the case.

The point meriting our attention is the judgment call made by the trial court about

*why* Cook missed the stop sign. Having heard the evidence first hand, the court pegged the State's culpability at ninety percent for negligent signing, and Cook's alcohol-impaired driving at ten percent. Had we tried the case, we might have factored those contributing causes quite differently. But absent a showing that the trial court's judgment was manifestly erroneous or the product of passion or prejudice, it should not be disturbed. I would affirm.

CARTER and LAVORATO, JJ., join this dissent.