Carl Richard COOK, Appellee,

v.

STATE of Iowa, Appellant.

No. 90–440.

Supreme Court of Iowa.

Oct. 16, 1991.

Bonnie J. Campbell, Atty. Gen., John R. Perkins, Deputy Atty. Gen., Richard E. Mull and David A. Ferree, Asst. Attys. Gen., for appellant.

Rick L. Olson, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL and ANDREASEN, JJ.

CARTER, Justice.

The State appeals from an adverse judgment following trial to the court of the tort claim of plaintiff, Carl Richard Cook. This trial followed reversal of an earlier judgment for plaintiff in the same case. *Cook v. State*, 431 N.W.2d 800 (Iowa 1988). The facts of the accident, detailed in our earlier opinion, will not be again set forth in detail.

After considering the issues raised on the present appeal, we reverse the district court's apportionment of fault on the ground that it considered a specification of negligence not supported by substantial evidence in the record. We remand the action to the district court for a new apportionment of aggregate fault on the existing record, preferably by the same judge who presided at the second trial.

At the first trial, which involved a bifurcated determination of liability and damages, the district court found that the State was negligent in failing to place "Stop Ahead" signs on both sides of the roadway where the accident causing plaintiff's injuries occurred. The court also found negligence by the State in placing warning signs an improper distance from the intersection. Plaintiff was found to be negligent to some degree in the manner he operated his motor vehicle. The court apportioned ninety percent of the aggregate fault to the State and ten percent to the plaintiff.

We reversed a judgment for the plaintiff based on these findings because of our conclusion that the court had failed to consider the speed at which plaintiff was operating his motor vehicle and his lookout for intersecting roadways and vehicles operating on those roadways. We also determined that the district court's findings following the first trial were inadequate with respect to the claim that the plaintiff was operating his motor vehicle while under the influence of alcohol.

Following the second trial, at which a different judge presided, the district court found the State was negligent in placing a "Stop Ahead" sign too far from the intersection, in failing to place "Stop Ahead" signs on both sides of the roadway, and in failing to provide an oversized, forty-eight-inch-square sign, warning of the duty to stop. The court also found the State was negligent in failing to construct rumble strips on the approach to this intersection.

The court found plaintiff was negligent in failing to keep a proper lookout, operating at an excessive speed under the circumstances, and in failing to stop and yield at the intersection. The court found the State failed to establish that plaintiff was operating a motor vehicle while under the influence of alcohol. As part of that finding, the court concluded that a blood alcohol test, taken when plaintiff was hospitalized following the accident, was inconsistent with clinical findings made at that time and that gaps existed in the chain of identification for the blood sample. The court apportioned seventy percent of the aggregate fault to the State and thirty percent to plaintiff. It denied the State's claim for thirty percent contribution from plaintiff for sums it had paid to settle claims of other persons involved in the accident.

The State does not challenge the findings made with respect to the inadequacy of the placement, size, and number of warning signs. It does challenge the findings concerning the necessity for installing rumble strips on the approach to the intersection and evidentiary rulings relating to that issue. The State also assigns error with respect to (1) improper expert testimony concerning plaintiff's pattern of driving immediately prior to the accident, (2) evidentiary issues concerning the issue of plaintiff's alleged intoxication and inadequacy of the court's findings with respect to same, and (3) failure of the district court to sustain the State's contribution claim based on the percentage of fault allocated to plaintiff. We consider each of these matters.

I. *Expert Testimony Concerning Plaintiff's Pattern of Driving Immediately Prior to the Accident.*

The State contends that the district court improperly allowed testimony by plaintiff's expert witnesses Slade Hulbert and Dr. George Brown concerning plaintiff's pattern of driving, perception, and reaction immediately prior to the accident. Hulbert

is an expert in the field of "human factors analysis." He testified concerning the reasonableness of plaintiff's behavior based upon assumptions gleaned from testimony in a prior criminal proceeding concerning plaintiff's conduct in passing another motor vehicle shortly before reaching the intersection where the accident occurred. Hulbert opined what plaintiff's conduct and reactions might reasonably have been in the course of the passing maneuver and immediately thereafter when the intersection first came into view.

■ Iowa Rule of Evidence 702 allows the admission of expert opinions if such opinions will assist the trier of fact in understanding the evidence or in determining certain factual issues. Rule 703 governs the bases upon which an expert opinion may be premised. It provides:

> The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the trial or hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

*Id.* This court has long been committed to a liberal view which allows opinion testimony if it will aid the jury and is based on special training, experience, and knowledge with respect to the issue in question. *Mermigis v. Servicemaster Indus., Inc.*, 437 N.W.2d 242, 247 (Iowa 1989).

■ Hulbert's qualifications were recognized in our prior opinion in this case. *Cook,* 431 N.W.2d at 804. Applying the standards of rule 702 and rule 703 to his qualifications and the data upon which his opinions were based, we do not believe that the district court abused its broad discretion in admitting this testimony. Our conclusions in this regard are buttressed by the fact that the jury, based on other evidence, ultimately found that plaintiff had not been adequately prewarned by the existing traffic control instrumentalities, a factor upon which Hulbert's conclusions were at least partially based. We reach a similar conclusion as to the admissibility of the testimony of Dr. George Brown with respect to plaintiff's reactions under the circumstances shown by the evidence. The district court did not err in allowing the testimony of Hulbert and Brown.

## II. *Evidentiary Issues Concerning Plaintiff's Alleged Intoxication and Claimed Inadequacy of the Court's Findings on this Issue.*

■ We next consider the State's argument that the trial court erred in permitting the plaintiff to offer, in the guise of rebuttal testimony, the testimony of two expert witnesses concerning the reliability of a blood alcohol test conducted when plaintiff was hospitalized following the accident. These witnesses had not been disclosed to the State prior to trial. Although we believe that the court might have excluded this evidence in its discretion, had it believed that plaintiff was attempting to surprise the State on an issue that both he and the State knew to be involved in the case, we cannot say that the court's rather broad discretion to admit such evidence was abused. *See, e.g., Moore v. Vanderloo,* 386 N.W.2d 108, 116 (Iowa 1986).

■ The State also challenges the admission of evidence by one of plaintiff's expert witnesses on the ground that that witness, as State Medical Examiner, should not have been permitted to testify against the interests of the State by reason of Iowa Code section 68B.6 (1989). This statute provides as follows:

> No official, employee, or legislative employee shall receive, directly or indirectly, or enter into any agreement, express or implied, for any compensation, in whatever form, for the appearance or rendition of services by that person or another against the interest of the state in relation to any case, proceeding, application, or other matter before any state agency, any court of the state of Iowa, any federal court, or any federal bureau, agency, commission or department.

*Id.* Our reading of this statute suggests that, whatever its scope, it does not constitute a rule for the exclusion of evidence. It is, rather, a rule against accepting com-

pensation. Whatever ramifications it may have within the latter context, it provides no basis for establishing error in the admission of the challenged testimony.

■ Finally, with respect to the evidence and findings surrounding plaintiff's alleged intoxication, the State asserts that the district court's findings on the question of intoxication or impairment do not provide the degree of specificity mandated by our opinion in the earlier appeal. We disagree. The court's findings were very detailed as to those factors which were found to negate the validity of the chemical testing. The findings were also detailed with respect to plaintiff's driving patterns immediately prior to the accident. Implicit in these findings was the ultimate conclusion that plaintiff's driving was not impaired to a significant degree. Further detail in the court's findings was not required by our decision on the prior appeal.

III. *Evidence and Findings Concerning Failure of the State to Install Rumble Strips.*

The State challenges the sufficiency of the evidence to support the finding that it was negligent in not installing rumble strips on the approach to the stop intersection where plaintiff was injured. It also contends that the court improperly admitted multiple hearsay evidence on this issue contrary to Iowa Rule of Evidence 805.

■ A. *Sufficiency of evidence of negligence.* We need not consider the evidentiary issue posed because we conclude that the State is correct in its sufficiency-of-the-evidence claim. In reaching this conclusion, we do not rely on the state-of-the-art defense established in Iowa Code section 25A.14(8) (1989) because plaintiff's injuries occurred before the effective date of that statute.[1] Notwithstanding the nonapplicability of the state-of-the-art defense, the evidence does not support a finding of negligence at any point in time with respect to the absence of rumble strips.

Giving the best light to plaintiff's evidence, it only establishes that rumble strips were utilized at the time of the accident and for many years prior thereto at intersections similar to the present accident site in both design and traffic pattern. This evidence, without more, is insufficient to show that the State, in the exercise of ordinary care, was required to install rumble strips at all highway intersections with those designs and traffic patterns. The district court erred in finding the State to have been negligent on this theory.

■ B. *Effect of unsupported specification of negligence on aggregate fault apportionment.* Our next inquiry is whether the court's erroneous determination of this particular theory of negligence was prejudicial to defendant when the findings of causal negligence on three other theories have gone unchallenged. The plaintiff strenuously urges that no prejudice has been shown. He notes that the trial court, in its written findings and conclusions, expressly stated that, if it were later determined that it erred in its conclusions about the rumble strips, each of the other three acts of negligence found to exist were, standing alone, a proximate cause of plaintiff's injuries.

We are unable to conclude that the trial court's "severability" finding with respect to proximate cause adequately disposes of the question concerning apportionment of negligence between the parties. Any act of negligence must be a proximate cause of injury to be a factor in apportionment of fault. In cases governed by Iowa Code chapter 668, this is mandated by statute. *See* Iowa Code § 668.1(2) (1989). Yet, in determining percentages of fault, "the trier of fact shall consider both *the nature of the conduct of each party* and the extent of the causal relation between the conduct and the damages claimed." Iowa Code § 668.3(3) (emphasis added).

Because the present action was filed before July 1, 1984, neither section 668.1(2) nor section 668.3(3) is applicable to this litigation. *See Baldwin v. City of Waterloo,* 372 N.W.2d 486, 491 (Iowa 1985). Not-

---

**1.** Plaintiff's injuries occurred in August of 1981. The state-of-the-art defense provided by Iowa Code § 25A.14(8) was enacted as part of 1983 Iowa Acts ch. 198, §§ 11, 12.

withstanding this circumstance, however, we are convinced that similar principles govern the determination of comparative negligence claims under the doctrines established in *Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1982). This creates a clear potential for a party found guilty of four separate acts of causal negligence to be assigned a higher percentage of negligence by the trier of fact than a party found guilty of fewer acts of causal negligence. This circumstance requires reversal of the trial court's finding on apportionment of negligence.

We conclude that the fairest and most expeditious procedure for correcting any error in the apportionment of negligence is to remand the case to the district court for a new apportionment of negligence between the parties. This apportionment shall be based on a comparison of plaintiff's negligence, as found in the court's written decision of February 2, 1990, with all acts of negligence found to exist on defendant's part in that decision except the acts relating to installation of rumble strips. This will permit redetermination of percentages of negligence assigned to the parties consistent with the principles established in this opinion. No new evidence shall be taken. Preferably, the redetermination of percentages of negligence shall be done by the same judge who presided at the second trial.

IV. *Whether Plaintiff is Liable for Contribution Based on the State's Settlement with Other Injured Parties.*

We are also asked to consider whether the trial court erred in denying the State's contribution claim against plaintiff for thirty percent of the sums the State paid to settle judgments entered at the first trial in favor of other parties injured in the collision. This issue has not become moot as a result of our reversal of the finding on apportionment of negligence. The State will doubtless continue to claim contribution based on whatever percentage of negligence is assigned to plaintiff on

remand. Comparative contribution has been recognized at common law in situations in which chapter 668 does not apply. *See Franke v. Junko,* 366 N.W.2d 536, 539–40 (Iowa 1985).

The district court denied the State's contribution claim on two grounds. First, it refused contribution because it believed the State, in settling the judgments of the other injured parties, did not pay more than seventy percent of the obligations owed. Second, the court found that, because plaintiff had entered into a settlement with these same parties prior to entry of the judgments settled by the State, the settlements did not relate to a common liability.

We agree with the State that the trial court's first ground for denying contribution is flawed. This determination was based on the premise that the judgments continued to be the obligation owed the parties with whom settlement was made. We disagree with this conclusion.

A judgment should not be viewed as the final determination of an obligation when an appeal is pending (as was the case here) or when the time for appeal has not expired. When a settlement is entered into during these periods of time, it is the amount of the settlement and not the amount of the judgment that governs the amount on which contribution is based.[2] Our conclusion on this issue is consistent with that previously expressed in *Schreier v. Sonderleiter,* 420 N.W.2d 821, 823–24 (Iowa 1988).

Notwithstanding our disagreement with the first reason given by the trial court for denying contribution, we affirm the denial based on the court's second reason. Because, as the court found, plaintiff settled the claims against him by the other injured parties prior to judgment, leaving the State to go its own way, there was no common liability remaining at the time the State effected its settlement. The principle

---

2. Of course, it is necessary to show that the amount of the settlement was reasonable. In order to defeat a right of contribution on the ground that the settlement was not reasonable, it must be shown that the amount paid was unreasonably high. Here, plaintiff seems to be arguing that the amount paid was unreasonably low.

involved is similar to that presented in *Mc-Donald v. Delhi Savings Bank*, 440 N.W.2d 839, 842 (Iowa 1989), in which we determined that a prior consent decree applicable to one but not all parties precluded the existence of a common liability. The district court did not err in denying the State's claim for contribution.

V. *Validity of Iowa Code Section 25A.4 in Limiting Recovery of Interest Against the State.*

█ As a final matter, we consider and reject plaintiff's constitutional challenge on cross-appeal to the statute limiting the State's liability for interest on awards in tort actions. The legislature has provided:

The state shall be liable in respect to such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances, *except that the state shall not be liable for interest prior to judgment* or for punitive damages.

Iowa Code § 25A.4 (1989) (emphasis added). Plaintiff contends that, because this statute denies payment of interest on tort awards against the State in the same manner as that followed for tort awards against private parties, this constitutes a denial of equal protection of the law. We disagree.

█ As a preliminary step in any equal protection analysis, it is necessary to determine whether persons who are similarly situated are subject to disparate treatment. *Johnson v. Smith*, 696 F.2d 1334, 1336 (11th Cir.1983). As stated in that case:

The law is clear that: "The Constitution does not require that things different in fact be treated in law as though they were the same. But it does require, in its concern for equality, that those who are similarly situated be similarly treated."

*Id.* (quoting B. Gunther, *Constitutional Law* 678 (10th ed. 1980)).

This court has stated the proposition in this manner:

It is axiomatic that "[a]ll persons not be treated alike to meet constitutional standards of equal protection. It is enough if all members of the same *class* are treated equally."

*State ex rel. Hamilton v. Snodgrass*, 325 N.W.2d 740, 744 (Iowa 1982) (quoting *Hack v. Auger*, 228 N.W.2d 42, 43 (Iowa 1975)).

In applying this principle, we have recognized that reasonable classifications may be established based on the situation or identity of the alleged tortfeasor without regard to the differences this creates among claimants. *Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 348 (Iowa 1991); *Allied Mut. Ins. Co. v. State*, 473 N.W.2d 24, 27 (Iowa 1991); *Rudolph v. Iowa Methodist Medical Center*, 293 N.W.2d 550, 559–60 (Iowa 1980). We are satisfied that providing a special classification for the State with respect to its rights and obligations in the litigation of tort claims, which differs from the rules applicable to private entities, is not an unsustainable legislative classification under the fourteenth amendment. *See State ex rel. Hamilton*, 325 N.W.2d at 744. This conclusion negates an equal protection challenge irrespective of apparent disparities that might exist if claims against the one class of tortfeasor are compared to claims against the other class. The district court did not err in rejecting plaintiff's constitutional challenge to section 25A.4.

We have considered all issues presented and conclude that the judgment of the district court should be reversed only as to the finding on apportionment of negligence between the parties. In all other respects, the judgment is affirmed. The case is remanded for redetermination of the allocation of negligence between the parties and a recomputation of liability based on the result of that determination. The costs of appeal are assessed equally between the parties.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.